IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRETON, LLC, *et al.*,  )
                        )
    Plaintiffs,  )
                        )
v.                      )  No. 1:09cv60 (AJT/TRJ)
                        )
GRAPHIC ARTS MUTUAL INSURANCE )
COMPANY, *et al.*,      )
                        )
    Defendants.  )
                        )

## MEMORANDUM OPINION

This case follows a fire on December 2, 2007 that damaged a warehouse owned by Plaintiffs Breton, LLC, Heman Ward, Inc., and B & H Management Co. (collectively referred to as "Plaintiffs" or "Breton") and the insurance coverage dispute that followed. On November 10, 2009, the Court granted summary judgment in favor of Plaintiffs as to coverage for the loss caused by the fire under an insurance policy (the "Policy") issued by Defendant Graphic Arts Mutual Insurance Co. ("Graphic Arts").[1] The underlying facts pertaining to that coverage dispute are set out in detail in the Court's earlier summary judgment ruling, *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, No. 1:09-cv-60, 2009 WL 3762302 (E.D. Va. Nov. 10, 2009).

Before this Court for decision are two remaining issues:

(1) when the period of restoration under the Policy begins to run; and

(2) whether Plaintiffs should recover prejudgment interest on the amount of the damage to the property and, if so, from what date prejudgment interest begins to run.

---

[1] Graphic Arts is referred to as "Utica" in the parties' papers.

The Court held a hearing on these issues on January 15, 2010, following which the Court took these issues under advisement. For the reasons stated below, the Court finds that: (1) the period of restoration begins to run on December 2, 2007, the date of the fire, and (2) Plaintiffs are entitled to prejudgment interest on the amount payable under the Policy for damage to the property beginning on July 1, 2008.

## I. Period of Restoration

Under the Policy, Plaintiffs are entitled to certain business interruption loss payments from Graphic Arts during a period of time referred to in the Policy as the "period of restoration." Specifically, the Policy states: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" Plaintiffs' Mem. in Support Exh. A (Policy) at Business Income Coverage Form (And Extra Expense), § A. The Policy then defines the period of restoration:

> "Period of Restoration" means the period of time that:
>
> a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

*Id.* at § G.3.

Plaintiffs and Graphic Arts have entered into two sets of stipulations that refer to the period of restoration. In the first set of stipulations, styled Stipulation as to Measurement of Damages (the "August 2009 Stipulations") (Doc. No. 100), filed with the Court on August 20, 2009, the parties stipulated as to how damages would be calculated in the event that the Court found coverage under the Policy for Plaintiffs' loss:

2

> 3.a. Building Damages shall be determined and agreed to between
> [two named experts] who shall set: . . . (2) the period of restoration
> necessary to rebuild the warehouse.
>
> b. That the time from which the period should begin to run will not
> be determined by the experts referred to in paragraph 3.a., but
> either by further agreement of the Plaintiffs and Graphic Arts or by
> agreement of their counsel.

In the parties' second set of stipulations, titled Plaintiffs and Graphic Arts Stipulation as to Building Damage and Time of Restoration (Doc. No. 114) filed with the Court on November 30, 2009 (the "November 2009 Stipulations"), after the Court found coverage under the Policy, the parties agreed on the following:

> iii. Period of Restoration: The parties also stipulated to allow the
> time it would take to reconstruct the building. The construction
> consultants further agreed, and it is therefore stipulated, that the
> time to reconstruction [sic] would be 10 months. The period from
> which this 10 month period begins to run will be determined by the
> Court.

Also on November 30, 2009, the parties filed Plaintiffs and Graphic Arts Mutual Insurance Company Joint-Report Specifying What Claims Remain To Be Decided ("Joint Status Report") (Doc. No. 115). In that Joint Status Report, the parties identify as an outstanding issue the "Determination by the Court as to the time from which the Period of Restoration Runs. . . . Specifically, what is in dispute is **the point from which the 10 month period of restoration begins to run,** and both sides agree that this issue must be decided by the Court." Joint Status Report at ¶ B.1.a. (emphasis added).

Plaintiffs contend that they could not begin reconstruction until after they received payment under the Policy from Graphic Arts (which has not yet occurred) or, alternatively, until after Graphic Arts and the fire officials had completed their investigation and released the property back to them, which Plaintiffs claim occurred on or about September 30, 2009, the date

3

on which the parties' consultants reached an agreement with respect to the measure and amount of loss. Accordingly, Plaintiffs argue that the period of restoration does not begin until after one of those events occurs.

Graphic Arts, on the other hand, argues based on the plain language of the Policy that the period of restoration began on December 2, 2007, the date of the fire, and ended ten months later. Graphic Arts contends that payment under the Policy is not a condition precedent to the start of the period of restoration and that Graphic Arts' non-payment based on the coverage dispute does not extend the period of restoration. Finally, Graphic Arts argues that any delay in the release of the property back to Plaintiffs was caused, at least in part, by Plaintiffs' own conduct and, in any event, any delay is immaterial to determining the date on which the period of restoration begins since the Policy unambiguously defines it as the date of the fire.

Based on the parties' August 2009 Stipulations, November 2009 Stipulations, and the Joint Status Report, the issue for this Court's determination is when the period of restoration begins to run. In order to resolve that issue, the Court must first look to the Policy itself and give the Policy's clear and unambiguous language its "plain, ordinary and popular sense." *Government Employees Ins. Co. v. Moore*, 266 Va. 155, 164, 580 S.E. 2d 823, 828 (2003) (internal quotations omitted). In this regard, the Policy unambiguously states that the period of restoration commences with the date of the loss. It is undisputed that the fire occurred on December 2, 2007; and the Court therefore finds that the period of restoration begins on December 2, 2007 and ends ten months later, on October 2, 2008. Moreover, nothing in the Policy provides any justification for finding that the date on which the period of restoration begins is postponed, delayed, or tolled based on either Graphic Arts' non-payment of insurance proceeds or Plaintiffs' lack of access to the property.

Although this issue has not been specifically addressed in any reported Virginia case, the Court's decision not to extend the start date of the period of restoration because of Graphic Arts' non-payment of insurance proceeds is consistent with and follows from Virginia case law. In *Whitmer v. Graphic Arts Mut. Ins. Co.*, 242 Va. 349, 410 S.E. 2d 642 (1991), the Supreme Court of Virginia considered whether a fire insurer's wrongful failure to pay the cash value of damaged property excused an insured's obligation under the policy to replace the damaged property before the insured could recover for the fire loss based on replacement cost. The Virginia Supreme Court concluded that such a failure to pay by an insurer did not relieve an insured of its obligation since there was "no policy provision imposing a duty upon [the insurance company] to tender [the insured] the cash value of his property prior to its replacement." *Id.* at 356. For the same reasons, it found irrelevant whether an insured lacked the financial ability to replace the destroyed property without prior payment of its actual cash value. *Id.* While the precise issue presented here was not addressed in *Whitmer*, the Virginia Supreme Court's reasoning in that case leads this Court to conclude that the Virginia Supreme Court would likewise reject Plaintiffs' position here that Graphic Arts' failure to pay delays the beginning of the period of restoration, even if Plaintiffs did not have the financial wherewithal to replace the property absent receipt of the insurance proceeds.

Plaintiffs contend that *Whitmer* has been overruled by amendments to Va. Code § 38.2-2119 that were enacted after the decision in *Whitmer*. That statute, as amended, provides in § 38.2-2119(b) that policies issued in Virginia must provide that an insured may "assert a claim for the actual cash value of the property insured thereunder without prejudice to his right to thereafter assert a claim for the difference between the actual cash value and the full replacement cost." It further provides that any claim for such difference must be made within six months of

(1) the last date on which the insured received payment for the actual cash value or (2) the date on which an order is entered declaratory of an insured's right to full replacement cost, whichever last occurs. *Id.* No court has addressed whether subsection (b) overrules *Whitmer*;[2] and the language in the statute cited by Plaintiffs says nothing about the issue in this case, namely whether Graphic Arts' failure to pay actual cash value proceeds delays the date on which the period of restoration begins. Moreover, the issue for the purposes of determining the period of restoration is how much time it *should* take to rebuild the property with "reasonable speed." Unlike the language governing an insured's right to replacement cost, the language pertaining to determining a period of restoration assumes a hypothetical building period that is unaffected by whether or not the building is in fact rebuilt or replaced.[3] For these reasons, the Court concludes that the underlying rationale of *Whitmer* continues to be operative.[4] Similarly, any delay in the release of the property back to Plaintiffs does not delay the date on which the period of

---

[2] Two cases touch on the statute. In *Filak v. George*, 327 Va. 612, 594 S.E. 2d 610 (2004), the Virginia Supreme Court notes in a footnote that a policy provision requiring that "plaintiffs were entitled to receive total replacement costs only if they repaired and replaced the house within six months after receiving payment for the 'actual cash value of the damage'" was "in accord with the requirements of Code § 38.2-2119." *Id.* at 615 and 615 n.1. Similarly unhelpful is *Hitt Contracting, Inc. v. Industrial Risk Insurers*, 258 Va. 40, 516 S.E. 2d 216 (1999), in which the Virginia Supreme Court notes that subsection (b) "protects the insured's ability to make a *claim for the difference* between the actual cash value and the replacement cost value" and "sets out the time frame within which that claim must be submitted to the insurer." *Id.* at 46 (emphasis in original).

[3] The hypothetical nature of the inquiry pertaining to the period of restoration parallels a similar inquiry under the Policy concerning during what portion of the period of restoration an insured is entitled to receive payment for loss of Business Income. In that regard, the Policy provides that, "If you do not resume 'operations,' or do not resume 'operations' as quickly as possible we will pay based on the length of time it would have taken to resume 'operations' as quickly as possible." Policy at § D.4.d.

[4] Another judge of this District recently held that *Whitmer* is still good law and that an insured may be required to replace damaged property before recovering under an insurance policy, despite the inherent unfairness of that rule. *Vaughan v. First Liberty Ins. Corp.*, No. 3:09-cv-364, 2009 WL 4030729, *8 (E.D. Va. Nov. 19, 2009) ("In the end, ... as much fault as can be found with the rule of *Whitmer*, it is the law of Virginia, and this Court is obligated to apply it.").

restoration begins. As explained above, the Policy unambiguously states that the period of restoration begins on the date of the fire and the parties agreed that it continues for a period of ten months. Accordingly, the period of restoration begins on December 2, 2007 and continues for ten months thereafter.

## II. Prejudgment Interest

Plaintiffs seek prejudgment interest with respect to the Policy proceeds. Graphic Arts disputes Plaintiffs' entitlement to prejudgment interest. The Court finds prejudgment interest is appropriate in this case.

Prejudgment interest is intended to make a plaintiff whole by compensating him for loss of use of money due as damages from the time the claim accrues until the judgment is entered. *West Virginia v. United States*, 479 U.S. 305 (1987). Va. Code § 8.01-382 provides:

> In any . . . action at law or suit in equity, the final order, verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The final order, judgment or decree entered shall provide for such interest until such principal sum be paid.

"Under Virginia law, it is within the discretion of the trial court to award prejudgment interest." *Glover Constr. Co., Inc. v. Hampton Roads Sanitation Dist.*, 166 F.3d 332, 1998 WL 883486, *3 (4th Cir. 1998). An award of prejudgment interest "is designed to compensate the plaintiff who has been without deserved relief for an extended period of time." *Alfred C. Cordon, P.C. v. Urban Telecommunications Corp.*, 941 F.2d 1206, 1991 WL 161501, *3 (4th Cir. 1991) (quoting *Gill v. Rollins Protective Serv. Co.*, 836 F.2d 194, 198 (4th Cir. 1987)). In determining whether to award prejudgment interest, the Court "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000). Graphic Arts implicitly

7

acknowledges that it is within this Court's discretion to determine whether and from what date to award prejudgment interest, but argues principally that prejudgment interest is inappropriate in this case because this case involved a legitimate business dispute, relying on cases that have refused to award prejudgment interest.

While whether or not there exists a legitimate legal dispute may be considered in determining whether to award prejudgment interest, the existence of a "bona fide legal dispute" does not preclude an award of prejudgment interest; nor does the fact that damages may be deemed "unliquidated" constitute an absolute bar to an award of prejudgment interest. *Gill*, 836 F.2d at 199 ("We are persuaded that Rollins' urged 'bona fide legal dispute' exception to the Virginia prejudgment interest statute is without support."); *Advanced Marine Enter., Inc. v. PRC, Inc.*, 256 Va. 106, 126, 501 S.E. 2d 148 (1998) (noting that while "[g]enerally, prejudgment interest is not allowed on unliquidated damages in disputes between the parties," the issue of whether prejudgment interest should be awarded, and from what date (regardless of whether the damages at that time are liquidated or unliquidated) is within the discretion of the court). Here, the Court has considered that Graphic Arts disputed coverage based on an issue of policy interpretation that was unsettled under Virginia law. Nevertheless, the Court concludes that, to the extent an assessment of prejudgment interest results in any unfairness or prejudicial impact on Graphic Arts' right to dispute coverage, that unfairness and prejudice is outweighed in this case by other equitable considerations including the benefits Graphic Arts received through the use of those amounts found to be payable under the Policy while this dispute was pending, the impact on Plaintiffs from not having the use of those funds which this Court has now determined

are payable to them under the Policy, and the amount of time that has passed since the date of the fire.[5]

Alternatively, Graphic Arts argues that should this Court decide to award prejudgment interest, such interest should not begin until August 19, 2009, the date on which the parties stipulated to the measurement of Plaintiffs' damages. The Court finds, however, based on the same considerations mentioned above, that the most appropriate date from which prejudgment interest should run is the date on which the Policy proceeds were payable absent any disputes between the parties. In this case, had Graphic Arts not disputed Plaintiffs' insurance claim, Plaintiffs were entitled to receive payment no later than approximately July 1, 2008.[6] Accordingly, the Court awards prejudgment interest from July 1, 2008 at six percent per annum. *See* Va. Code § 6.1-330.54.

Finally, Graphic Arts contends that Plaintiffs essentially waived any right to prejudgment interest when Plaintiffs entered into stipulations concerning the measure and extent of damages without any mention of prejudgment interest. In this regard, Graphic Arts relies on the language

---

[5] None of the cases cited by Plaintiffs involves the type of insurance contract at issue here. Rather, those cases include a host of considerations, not present here, relating to the types of claims asserted (for example, business torts, conspiracy claims, and partnership disputes) as well as the nature of the party against whom prejudgment interest was sought, which included municipalities and other types of public entities and agencies. *See, e.g., Continental Ins. Co. v. City of Virginia Beach*, 908 F. Supp. 341 (E.D. Va. 1995); *Skretvedt v. Kouri*, 248 Va. 26, 445 S.E. 2d 481 (1994).

[6] Under the Policy, payment for an undisputed claim is due thirty days after the insured submits proof of loss. In this case, Plaintiffs submitted proof of loss no later than the end of May 2008. Policy at § D (Loss Conditions) ("We will pay for covered loss within 30 days after we receive sworn proof of loss" if the parties have reached an agreement on the amount.). The Court has also considered Graphic Arts' position that Plaintiffs' initial claim, as presented, far exceeded what the parties ultimately agreed to as the value of the loss. Nevertheless, Graphic Arts' refusal to pay under the Policy in this case stemmed principally not from a dispute over or inability to determine the value of the claim but from a dispute over coverage.

of the parties' August 2009 Stipulations, entered into by the parties before this Court's decision finding coverage under the Policy, as well as the November 2009 Stipulations.

The August 2009 Stipulations provide in part:

> 3. That the parties stipulate and agree as to the amount of Plaintiffs' damages, agreed to by the following:
>
> a. Building Damages shall be determined and agreed to between [certain selected experts], who shall set: (1) the amount of building damages (as to Actual Cash Value and Replacement Value); and (2) the period of restoration necessary to rebuild the warehouse.

The August 2009 Stipulations, which cover other damages issues including Plaintiffs' lost business income claim, also provide that "the amounts determined as set forth above are hereby stipulated to as binding on the parties hereto, and that such determination will set the amount of Plaintiffs' damages, if any, in this matter." *Id.* at ¶ 4. In their November 2009 Stipulations, filed with the Court after the Court found coverage, the parties acknowledge that they had previously entered into the August 2009 Stipulations "which set forth the means by which the amount of Plaintiffs' damages would be determined in the event the Court found coverage." November 2009 Stipulations at 1. The November 2009 Stipulations further acknowledge that "in accord with the agreed terms of the [August 2009] stipulation, Plaintiffs' construction consultant and Graphic Arts' construction consultant reached an agreement as to those damages." *Id.* The parties also include in the November 2009 Stipulations the specific values as determined by their consultants, both as to replacement cost and actual cash value. There is no mention of prejudgment interest or any indication that the parties, or their experts, included, contemplated, or considered prejudgment interest in the stipulated amounts.

The Court concludes that Graphic Arts' contention that the Plaintiffs stipulated away their rights, if any, to prejudgment interest is without merit. As discussed above, neither set of

stipulations discusses prejudgment interest whatsoever; and it is clear from the substance of the stipulations that the parties were focused on a methodology for determining through expert consultants only those building damages based on the value of the fire loss under the Policy, as defined under the Policy, that is, actual cash value and replacement cost. There is no evidence of any mutual intent to deal with the issue of prejudgment interest as part of that methodology, nor would it make any sense to do so through their construction experts. *Litman v. Toll Brothers, Inc.*, 263 Fed. Appx. 269, 273 (4th Cir. 2008) (finding that under Virginia law, a court must be "justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent") (quoting *So. Ry. Co. v. Franklin & Pittsylvania R.R. Co.*, 96 Va. 693, 32 S.E. 485, 486 (1899)). Accordingly, the Court finds that the parties did not intend to preclude this Court from considering an award of prejudgment interest.[7]

After considering all of the circumstances and weighing the equities in this case, the Court finds that prejudgment interest is necessary and otherwise appropriate in order to make Plaintiffs whole with respect to their entitlement to proceeds under the Policy and that such interest should begin on July 1, 2008.

### III. CONCLUSION

For the above reasons, the Court finds that the ten month period of restoration begins on December 2, 2007 and that Plaintiffs are entitled to prejudgment interest at the rate of six percent per annum from July 1, 2008 on the amount payable under the Policy for damage to the property.

---

[7] The Court also finds some support for this conclusion in the Joint Status Report, filed with the Court on November 30, 2009, the same day as the November 2009 Stipulations were filed. The Joint Status Report states without qualification or reservation that "Plaintiffs and Graphic Arts also discussed prejudgment interest and agree that this issue must be decided by the Court."

11

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
February 24, 2010